**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
FOSSIL INDUSTRIES, INC.,

              Plaintiff,

                   **ORDER**
      -against-             12-cv-2497 (ADS) (SIL)


ARJO WIGGINS, USA, INC. and ARJO
WIGGINS SAS,
                Defendants.
----------------------------------------------------------X

<u>**APPEARANCES:**</u>

**The Law Offices of Raymond A. Giusto, P.C.**
*Attorneys for the Plaintiff*
715 South Country Road
West Bay Shore, NY 11706
      By: Raymond Anthony Giusto, Esq.
        Brooke L. Anthony, Esq., Of Counsel

**Verrill Dana LLP**
*Attorneys for the Defendant Arjo Wiggins, U.S.A., Inc.*
33 Riverside Ave, POB 5116
Westport, CT 06881
      By: Douglas R. Steinmetz, Esq., Of Counsel


**SPATT, District Judge**.

      This case arises from an allegation that the Defendant Arjo Wiggins, USA, Inc. ("Arjo USA") delivered defective high quality paper to the Plaintiff Fossil Industries, Inc. (the "Plaintiff"), a manufacturer of outdoor signs, in breach of oral agreements and alleged express and implied warranties.

      On May 18, 2012, the Plaintiff commenced this action against the Defendants Arjo USA and Arjo Wiggins SAS ("Arjo SAS" and collectively, the "Defendants"). The Plaintiff asserts five claims against the Defendants for breach of contract and breach of the warranties of fitness and merchantability, and a claim seeking declaratory relief in the form of a judgment requiring

the Defendants to indemnify the Plaintiff for any claims brought by its customers arising from the allegedly defective paper.

The Plaintiff never served Arjo SAS with a summons or a copy of the complaint. Arjo SAS has not appeared in this action.

Presently before the Court is a motion by the Defendant Arjo USA pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56 for summary judgment dismissing the complaint in its entirety. For the reasons set forth below, the Court grants, in part, and denies, in part, the motion by Arjo USA.

## I. BACKGROUND

Unless otherwise specified, the following facts are drawn from the parties' Rule 56.1 statements.

### A. The Underlying Facts

The Plaintiff is a New York corporation that manufactures custom signs and graphics, which are primarily for outdoor use. (Cesare Decl. ¶ 2.)

The Defendant Arjo USA is a Connecticut corporation that sells paper for commercial use.

The Defendant Arjo SAS is a French corporation. The record does not clarify what relationship, if any, exists between Arjo USA and Arjo SAS, nor does it make clear the nature of Arjo SAS's business.

From 2001 to 2005, the Plaintiff utilized a paper produced by "Mead/Onyx" in manufacturing its signs. (Giusto Decl., Ex. A, at Tr. 56:10–17.)

In about 2005, Arjo USA developed Arjojet paper, a paper used for ink jet printers. (Giusto Decl., Ex. B, at Tr. 18:21–22.)

Howard de Cesare ("de Cesare"), who is the President of the Plaintiff, testified that in late 2004 or early 2005, his brother, Mark de Cesare, received a call from Ivan Ianetta ("Ianetta"), a salesperson at Arjo USA. (<u>Id.</u> at Tr. 35:21–36:15.) The purpose of the call was to sell the Plaintiff Arjojet paper. (<u>See</u> <u>id.</u>)

Subsequent to that conversation, de Cesare met with Ianetta and Wayne Franklin ("Franklin"), the President of Arjo USA, at the Plaintiff's facilities. (<u>Id.</u> at Tr. 42:6–20.) de Cesare testified that the purpose of the meeting was for Franklin to introduce him to the Arjojet paper and provide him with samples for the Plaintiff to test. (<u>Id.</u> at Tr. 38:9–16.) According to de Cesare's deposition testimony:

> What Wayne said is this paper was produced specifically for our industry and worked exactly the same as our paper that we would be getting from Mead, and the only difference . . . was that it would be much w[hiter] paper, obviously being w[hiter] paper, [it] would give us a better looking product than we currently had.

(<u>Id.</u> at 38:21–39:5.) de Cesare also stated that Franklin told him that "Izone" and "Folia," two of the Plaintiff's competitors, were interested in purchasing Arjojet paper. (<u>Id.</u> at Tr. 39:18–23.)

Ianetta, who was also present at the meeting, testified that the "sum and substance" of what he told de Cesare was, "Here's this product that has been tested. Some people are using it happily[.]" (Giusto Decl., Ex. B, at Tr. 33:19–23.)

In a declaration filed after his deposition, de Cesare states that he told Franklin during the 2005 meeting and in subsequent conversations that the Plaintiff gave its clients a ten year warranty on all of its signs and therefore, "any paper we purchase[] would have to perform within that warranty." (de Cesare Decl. at ¶ 6.) Allegedly, in response to the concerns expressed by de Cesare, "Arjo repeatedly represented that Arjojet [paper] would perform in exactly the

same manner as the Mead paper and that it would perform in accordance with our ten year warranty." (Id.)

On July 13, 2005, after using the sample of Arjojet paper given to him by Franklin, the Plaintiff agreed to purchase Arjojet paper. (Giusto Decl., Ex. A, at Tr. 45:9–25.) At his deposition, de Cesare explained his decision to purchase the paper:

> So we basically went through the printing and decided that it was worth spending twice as much for this [Arjojet] paper over the [Mead] paper we were currently using to get this w[hiter] image. Again, . . . we felt that [if] we didn't do that, we would be at a competitive disadvantage, because Arjo was going to sell that to Folia and Izone.

(Id. at Tr. 42:13–20.)

In his subsequent declaration, de Cesare stated that the Plaintiff decided to purchase Arojet "[b]ased upon [Arjo's] assurances that the paper would perform [for ten years]." (de Cesare Decl. at ¶ 8.)

Arjo USA delivered Arjojet paper to the Plaintiff on the following dates, and the Plaintiff, in turn, compensated Arjo USA in the following amounts of money:

| | |
|---|---|
| 1) 8/8/05 | $5,325.00 |
| 2) 1/29/06 | $781.00 |
| 3) 6/28/06 | $6,070.50 |
| 4) 1/23/07 | $7,987.50 |
| 5) 3/26/07 | $10,437.00 |
| 6) 7/2/07 | $6,742.50 |
| 7) 7/18/07 | $24,665.40 |
| 8) 5/7/08 | $2,669.60 |
| 9) 6/30/08 | $42,103.00 |
| 10) 7/30/08 | $12,869.46 |

(The Def.'s 56.1 Statement at ¶ 4.)

de Cesare testified that from July 2005 to August 2008, the Plaintiff sold approximately $7.5 million worth of signs which used Arjojet paper. (Giusto Decl., Ex. A, at Tr. 60:17–23.)

In August 2008, shortly after making its final purchase of Arjojet paper, de Cesare testified that he received an unspecified number of complaints from the Plaintiff's clients that its signs were "turning to cream color, and the colors were kind of fading." (Id. at Tr. 68:5–9.) In addition, de Cesare allegedly noticed that the UV layer — the "very thin or cellophane material that gets laid on the top [of finished signs]" — was "peeling off." (Id. at Tr. 65:5–22.)

de Cesare reached out to Franklin to report these issues with its signs. (Id. at Tr. 83:17–21.) Allegedly, Franklin denied that the problems were due to the Arojet paper and suggested that the problems were caused by Pionite, a company that the Plaintiff uses to press its signs. (Id. a Tr. 13:11–17; 80:16–23.)

In a September 27, 2008 email to Franklin, de Cesare wrote, "At this point we are assessing the damages this has and will cause Fossil and are in contact with our attorney to protect our rights." (Id. at Tr. 87:24–88:9.) Franklin responded, "[S]ince you have contact[ed] a lawyer, it is best to put them in touch with ours at your convenience." (Id. at Tr. 88:21–89.)

According to a Local Rule 56.1 statement filed by Arjo USA, on February 18, 2009, almost six months later, the parties agreed that Arjo USA would "[t]ake back the last two shipments of the [Arjojet] Paper and credit[] Fossil the total purchase price of those shipments ($54,972.46)." (The Def.'s 56.1 Statement at ¶ 5.)

The Plaintiff did not dispute this statement. However, in a declaration filed in connection with the present motion, de Cesare stated, "Arjo [USA] . . . agreed to take back approximately 50 rolls and give [the Plaintiff] a credit toward its last two invoices. Notwithstanding the foregoing, . . . as of the date of the Complaint, . . . [the Plaintiff] sustained approximately $1,646,931 in costs to replace orders originally filled with Arjo [USA]'s defective paper." (The Pl.'s Counter 56.1 Statement at ¶ 31.) In addition, at his deposition, when asked if the Plaintiff had "used

some paper . . . covered by those [last] two invoices," de Cesare responded, "That's correct."

(Giusto Decl., Ex. A, at Tr. 93:3–5.)

**B. The Procedural History**

As noted, on May 18, 2012, the Plaintiff commenced this action, alleging five causes of action sounding in breach of contract and breach of warranty arising from the shipment of the alleged defective products. In addition, the Plaintiff requested a declaratory judgment that the Defendants are required to indemnify it for any judgments by its customers against it arising from the allegedly defective paper, as well as, "all legal fees, costs, and expenses incurred by it in the prosecution of this action[.]" (Compl. at ¶ 55.)

At the time of filing the complaint, the Plaintiff alleges that it had sustained approximately $1,646,931 in costs to replace signs which used the allegedly defective Arjojet paper. (The Pl.'s Counter 56.1 Statement at ¶ 40.)

On October 2, 2012, the Defendant Arjo USA filed an answer to the complaint. Also, as noted, Arjo SAS was never served with a summons or a copy of the complaint, and has not appeared in this action.

On June 23, 2014, United States Magistrate Judge William D. Wall certified that discovery was completed and accepted the parties' proposed pre-trial order.

Presently before the Court is a motion by Arjo USA for summary judgment dismissing the complaint.

## II. DISCUSSION

**A. As to Arjo SAS**

As an initial matter, the Court notes that Arjo SAS has never been served with a summons or a copy of the complaint, nor has it appeared in this action. Pursuant to Fed. R. Civ. P. 4(m):

> If a defendant is not served within 120 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1) or to service of a notice under Rule 71.1(d)(3)(A).

Fed. R. Civ. P. 4(m). Rules 4(f) and 4(j)(1) are only applicable to serving individuals or foreign states. Thus, Rule 4(m) is applicable to this case.

As noted, the Plaintiff filed its complaint on May 18, 2012. Thus, the 120-day period within which it was required to serve Arjo SAS lapsed on September 17, 2012, almost two years ago. The Plaintiff does not provide good cause for its failure to serve Arjo SAS within 120 days, and does not ask the Court to extend the period of service. Nor does it respond to the Defendant Arjo USA's contention that Arjo SAS is not a party to this action because it has never been served. Accordingly, the Court finds dismissal without prejudice of the complaint as against Arjo SAS is warranted. See Hiller v. Farmington Police Dep't, No. 3:12-CV-1139 (CSH), 2015 WL 4619624, at *3 (D. Conn. July 31, 2015) ("In the absence of proper service, a district court lacks personal jurisdiction over those defendants not properly served.") (citing Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 59 (2d Cir .2012)); Brooks v. Reimer, No. 00-CV-0834 E(F), 2002 WL 1020781, at *1 (W.D.N.Y. Feb. 20, 2002) ("Therefore and because

Morris was never served as is provided in Rule 4 of the Federal Rules of Civil Procedure . . . , plaintiff's claim against him will be dismissed.)

The Court will now turn to the motion by Arjo USA for summary judgment.

## B. Legal Standards

Fed. R. Civ. P. 56(a) provides that a court may grant summary judgment when the "movant shows there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law."

"Where the moving party demonstrates 'the absence of a genuine issue of material fact,' Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

In that regard, a party "must do more than simply show that there is some metaphysical doubt as to the material facts[.]" Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Further, the opposing party "'may not rely on conclusory allegations or unsubstantiated speculation[.]'" F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (quoting Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998)).

"Where it is clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted." Id. (quoting Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)).

**B. As to the Motion by Arjo USA**

Arjo USA asserts that the complaint should be dismissed because (i) the Plaintiff is time-barred from asserting breach of contract and breach of warranty claims on at least eight of the ten shipments of allegedly defective paper; (ii) the Plaintiff's breach of contract and breach of warranty claims arising from the final two shipments fail as a matter of law because the Plaintiff cannot show any damages; and (iii) the Plaintiff's request for declaratory relief fails because it is premised on breach of contract and breach of warranty, claims that Arjo USA contends fail as a matter of law. (The Def.'s Mem. of Law at 2–5.)

In response, the Plaintiff asserts (i) his breach of contract and breach of warrant claims are not time-barred because they fall under the continuing violation and "future performance" exceptions; and (ii) it has raised a genuine issue of material fact with regard to whether the allegedly defective paper from the last two shipments caused it damages. It does not respond to the Defendant's argument regarding its declaratory judgment claim.

The Court will address the parties' arguments, in turn.

**1. Choice of Law**

As an initial matter, the Court must determine what law should be applied to the Plaintiff's state law claims for breach of contract and breach of warranty. Where, as here, "jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply the New York choice-of-law rules and statutes of limitations." Stuart v. Am. Cyanamid Co., 158 F.3d 622, 626 (2d Cir. 1998). Both parties agree that New York law should be applied. Moreover, the Plaintiff is a New York corporation and it received the alleged defective shipments of Arjojet paper that form the basis of its claims at its facilities in New York. Thus, New York clearly has the most significant relationship to the dispute. Accordingly, the Court

applies New York law to the Plaintiff's claims.  See <u>Santalucia v. Sebright Transp.</u>, Inc., 232

F.3d 293, 296 (2d Cir. 2000) ("The parties' briefs assume that New York law controls this

dispute, and such 'implied consent ... is sufficient to establish choice of law.' "); <u>Valdin</u>

<u>Investments Corp. v. Oxbridge Capital Mgmt., LLC</u>, No. 08-CV-4325 ADS, 2015 WL 3397079,

at *8 (E.D.N.Y. May 26, 2015) ("Here, the briefs of both parties assume that New York law

controls this dispute. Moreover, the Defendants are all New York limited liability companies,

and the alleged failure by the Defendants to comply with the Settlement Orders took place in

New York. Accordingly, the Court will apply New York law to the Plaintiff's claims.")

**2. As to the Plaintiff's Breach of Contract Claims**

It is well-established that "[u]nder New York law, 'an action for breach of contract

requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the

other party; and (4) damages.'" <u>First Investors Corp. v. Liberty Mut. Ins. Co.</u>, 152 F.3d 162, 168

(2d Cir. 1998) (quoting <u>Rexnord Holdings, Inc. v. Bidermann</u>, 21 F.3d 522, 525 (2d Cir. 1994)).

New York law also provides a cause of action against merchants in connection with the

sale of goods for the breach of express and implied warranties.  Specifically, under section 2–313

of the N.Y.U.C.C., an express warranty is created by: (i) "[a]ny affirmation of fact or promise

made by the seller to the buyer which relates to the goods and becomes part of the basis of the

bargain"; (ii) by "[a]ny description of the goods which is made part of the basis of the bargain";

(iii) or by "[a]ny sample or model which is made part of the basis of the bargain." <u>See also</u>

<u>Caronia v. Philip Morris USA, Inc.</u>, 715 F.3d 417, 433 (2d Cir. 2013) ("A merchant breaches the

UCC implied warranty of merchantability if it sells goods that are not 'fit for the ordinary

purposes for which such goods are used[.]'") (quoting N.Y. U.C.C. § 2–314(2)(c)).

Although it not entirely clear from the face of the complaint, it appears that the Plaintiff asserts three claims for breach of contract and two claims for breach of warranty. However, these claims significantly overlap. All the claims arise principally from the same allegation — namely, that the Defendants delivered defective goods to the Plaintiff. (See Compl. at ¶¶ 22, 25.) Thus, they all rely on a theory that sounds in a breach of warranty cause of action. See Marcus v. AT & T Corp., 938 F. Supp. 1158, 1172 (S.D.N.Y. 1996) ("Liability on that [breach of warranty] theory arises only when 'persons or property are damaged because of a product's failure to live up to an express or implied representation by the manufacturer or other supplier.'") (quoting Tinnerholm v. Parke Davis & Co., 285 F.Supp. 432, 440 (S.D.N.Y. 1968)).

Moreover, the Plaintiff has not offered any evidence of the alleged agreements that Arjo USA breached. For example, the Plaintiff does not make clear whether the alleged agreements are written or oral; or what the terms the Defendants allegedly breached other than the express and implied warranties of fitness and merchantability. Thus, the Court finds that the Plaintiff's breach of contract claims fail as a matter of law, and dismisses those claims. See Martinez v. Vakko Holding A.S., No. 07 CIV. 3413 (LAP), 2008 WL 2876529, at *2 (S.D.N.Y. July 23, 2008) ("A breach of contract claim will be dismissed where a plaintiff fails to allege 'the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated.'") (quoting Highlands Ins. Co. v. PRG Brokerage, Inc., No. 01 Civ. 2272, 2004 WL 35439, at *8 (S.D.N.Y. Jan. 6, 2004)); see also Kraus v. Visa Intern. Service Ass'n, 304 A.D.2d 408, 408, 756 N.Y.S.2d 853, 854 (1st Dep't 2003) ("Also properly dismissed for failure to state a cause of action were plaintiff's breach of contract claims since plaintiff failed to allege the breach of any particular contractual provision").

The Court will now turn to the Plaintiff's two breach of warranty claims.

**3. As to Whether the Plaintiff's Breach of Warranty Claims Are Time-Barred**

As set forth below, the Court agrees that the Plaintiff's breach of warranty claims arising from the first eight shipments of Arjojet are time-barred.

N.Y.U.C.C. § 2-725(1) provides that an action for breach of contract for sale or breach of warranty "must be commenced within four years after the cause of action has accrued." A breach of warranty action "accrues" when the breach occurs, which according to N.Y.U.C.C. § 2-725(2) is "when tender of delivery is made."

Here, the Plaintiff commenced this action on May 18, 2012, alleging that the Defendant breached oral agreements and warranties of fitness and merchantability by selling it allegedly defective paper from July 2005 to July 2008. (Compl. at ¶¶ at 19–38.)

It is undisputed that Arjo USA delivered Arjojet paper to the Plaintiff on the following ten dates:

1) 8/8/05
2) 1/29/06
3) 6/28/06
4) 1/23/07
5) 3/26/07
6) 7/2/07
7) 7/18/07
8) 5/7/08
9) 6/30/08
10) 7/30/08

Arjo USA contends that the Plaintiff's breach claims based on the first eight purchases of Arjojet paper are time-barred because the Plaintiff received the shipments of that paper more than four years before the Plaintiff commenced this action. (The Def.'s Mem. of Law at 3.)

In response, the Plaintiff acknowledges that the first eight shipments fall outside of the four-year limitations period but states that its claims arising from those shipments are timely

under the (i) "continuing violation doctrine"; and (ii) the "future performance" exception. (The Pl.'s Opp'n Mem. of Law at 1, 9.)

As set forth below, the Court does not find that either exception is applicable to the Plaintiff's claims.

Under the "continuing violation doctrine," where a party alleges that it entered into a contract that "require[s] continuing performance over time," the limitations period is tolled until the date of the commission of the last wrongful act. Guilbert v. Gardner, 480 F.3d 140, 150 (2d Cir. 2007) ("[A] contract requires continuing performance over a period of time, each successive breach may begin the statute of limitations running anew."); Stalis v. Sugar Creek Stores, Inc., 295 A.D.2d 939, 940-41, 744 N.Y.S.2d 586, 587 (4th Dep't 2002) ("However, where a contract provides for continuing performance over a period of time, each breach may begin the running of the statute anew such that accrual occurs continuously"); Doukas v. Ballard, 39 Misc. 3d 1227(A), 972 N.Y.S.2d 143 (N.Y. Sup. Ct. 2013) ("The continuing-wrong or continuing-violation doctrine tolls the limitations period to the date of the commission of the last wrongful act when there is a series of continuing wrongs.").

In Guilbert v. Gardner, 480 F.3d 140, 143 (2d Cir. 2007), the plaintiff-employee and defendant-employers entered into an agreement pursuant to which the defendants agreed to make annual deposits of $10,000 per year into the plaintiff's pension fund. The plaintiff asserted a breach of contract claim against the defendants for failure to pay the pension funds for the entire duration of his employment. Id. at 144–45. Although some of the defendants' missed payments fell outside of the limitations period, the court found that the plaintiff's breach claim as to all of the payments to be timely "[b]ecause [the] Defendants' obligation to contribute $10,000 per year to Plaintiff's pension fund was a continuing one." Id. at 150; see also Orville v. Newski, Inc.,

155 A.D.2d 799, 547 N.Y.S.2d 913, 914 (Third Dep't 1989) ("We are of the view that a breach of the contract occurred each year in which defendant failed to make the minimum payment, and because the obligation is a continuing one, defendant's Statute of Limitations claim is without merit.").

Here, by contrast, there is no evidence in the record that the Plaintiff entered into a contract with Arjo USA, let alone a contract that envisioned continuing performance. To the contrary, it is undisputed that the Plaintiff made ten separate purchase orders from Arjo USA, none of which contained a condition for repeat performance. Therefore, the Court finds the continuing violations doctrine does not apply to the Plaintiff's claims.

The Plaintiff also attempts to save its claims arising from the first eight shipments of the Arjojet paper by asserting that the Defendant provided the Plaintiff with a warranty of future performance. (The Pl's Opp'n Mem. of Law at 7–9.)

As noted above, N.Y.U.C.C. § 2-725 provides that an action for breach of a warranty accrues on the date "when tender is made." However, "where a warranty *explicitly* extends to future performance of the goods . . . , the cause of action accrues when the breach is or should have been discovered." N.Y.U.C.C. § 2-725(2) (emphasis added). This is known as the "future performance" exception.

Courts have interpreted the "explicit" requirement strictly. For example, in <u>Rosen v. Spanierman</u>, 894 F.2d 28, 29 (2d Cir. 1990), the plaintiffs purchased what they were told by the defendant-gallery owner was an original painting by John Singer Sargent in 1968. <u>Id.</u> at 30. The invoice of sale for the painting contained the following guarantee, "This picture is fully guaranteed by the undersigned to be an original work by John Singer Sargent." <u>Id.</u> In 1987, the plaintiffs discovered that the painting was a fake and commenced an action against the

defendant, asserting breach of warranty and common law fraud claims.  Id.  The district court

granted the defendant's motion for summary judgment on the breach of warranty claim because,

among other things, it found that the defendant's warranty "did not explicitly extend to future

performance," and was thus time-barred.  Id.

On appeal in Rosen, the plaintiffs argued, among other things, that (i) since authenticity

is a "permanent quality," a warrant of authenticity "necessarily extends to the future"; (ii) "a

warranty explicitly extends to future performance when the nature of the product implies

performance over an extended period"; and (iii) subsequent appraisals conducted by the

defendant indicated an intent to extend the warranty.  Id. at 31

The court rejected the plaintiff's first two arguments because the court found that the

plaintiffs were essentially asking the court to do away with the requirement that the warranty be

explicit:  "It would be inappropriate to expand this exception beyond its plain terms by

dispensing with the condition that, to take advantage of the exception, the warranty explicitly

extend to future performance."  Id. at 31.

The court also rejected the plaintiff's third argument because "the appraisals themselves

contain no warranties and the appraisals were completely separate transactions from the sale of

the painting."  Id. at 32.  Therefore, the court found that the appraisals "could not, as plaintiffs

maintain, revive [the] original warranty."  Id.

Here, prior to Arjo USA's motion for summary judgment, the Plaintiff had not alleged

that Arjo USA provided it with any explicit warranties of future performance.  Rather, it only

alleged that the Defendant made warranties of fitness and merchantability.  For example, at his

deposition de Cesare testified, "What Wayne [Franklin] said is this paper was produced

specifically for our industry and worked exactly the same as our paper that we would be getting

from Mead[.]" (Id. at 38:21–39:5.)  Further, when asked why he decided to purchase Arjojet paper, the Plaintiff made no reference to a ten year warranty: "[W]e felt that [if] we didn't do that, we would be at a competitive disadvantage, because Arjo was going to sell that to Folia and Izone." (Id. at Tr. 42:13–20.)

Similarly, the Plaintiff makes no reference to a ten-year warranty in the complaint, which alleged only that the Defendants "warranted the same to be fit and proper" and would be "of good and merchantable quality." (Compl. at ¶ 40.)  Nor does the Joint Pre-Trial Order refer to a ten-year warranty.  Rather, it states only that the Defendants "warranted the [Arjojet paper] to be fit and proper." (Joint Pre-Trial Order, Dkt. No. 18, at 4.)

As the Second Circuit made clear in Rosen, warranties that a product would be "fit or proper" do not satisfy the "explicit" requirement of the "future performance exception." See Rosen, 894 F.2d at 31 ("Lipman and the Rosens are, in essence, asking us to create an exception to section 2–725's explicitness requirement when the warranty concerns an immutable quality. We decline this invitation to invade what is properly the domain of the state legislature."); Jackson v. Eddy's LI RV Ctr., Inc., 845 F. Supp. 2d 523, 532 (E.D.N.Y. 2012) ("There can be no claim of delayed accrual for future performance of any implied warranty, as such extension must be explicit, and is therefore inconsistent with the concept of an implied warranty."); Woods v. Maytag Co., No. 10-CV-0559 (ADS) (WDW), 2010 WL 4314313, at *3 (E.D.N.Y. Nov. 2, 2010) (Spatt, J) ("[T]his exception does not apply to the Plaintiff's causes of action for breach of the implied warranty of fitness and the implied warranty of merchantability because '[t]he [future performance] exception speaks to express warranties not implied warranties.'") (quoting Rochester–Genesee Reg'l Trans. Auth. v. Cummins Inc ., No. 09–CV–6370, 2010 WL 2998768, at *3–4 (W.D.N.Y. July 28, 2010)).

The only other evidence that the Plaintiff offers in support of its contention is a declaration by de Cesare, the Plaintiff's president, which the Plaintiff filed in response to the Defendant's motion for summary judgment.

In reply, Arjo USA asserts that (1) the Court should not consider de Cesare's declaration because it is inconsistent with his prior deposition testimony; and (2) even if it could consider it, the representation is too vague to raise a genuine issue of material fact. (The Def.'s Reply Mem. of Law at 1–9.) The Court agrees with Arjo USA's first argument, and therefore, does not reach its second contention.

In his declaration, de Cesare stated that in 2005, he informed Franklin, the President of Arjo USA, that the Plaintiff gave its clients ten-year warranties on the signs that it manufactured. (de Cesare at ¶ 6.) In response, Franklin allegedly "repeatedly represented that Arjojet would perform . . . in accord with our ten year warranty." (Id. at ¶ 6.)

However, as indicated earlier, prior to Arjo USA's motion for summary judgment, the Plaintiff made no mention of a warranty of future performance. Therefore, the only evidence offered by the Plaintiff that Arjo USA made an express ten-year warranty is a statement in a declaration by de Cesare filed in response to Arjo USA's motion for summary judgment.

"The rule is well-settled in this circuit that a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony." Trans-Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F.2d 566, 572 (2d Cir. 1991); see also Moll v. Telesector Res. Grp., Inc., 760 F.3d 198, 205 (2d Cir. 2014) ("The 'sham issue of fact' doctrine 'prohibits a party from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony.'"); Heil v. Santoro, 147 F.3d 103, 110 (2d Cir. 1998) ("'[A] party may not create an issue of fact by

submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.'") (quoting <u>Hayes v. N.Y. City Dep't of Corr.</u>, 84 F.3d 614, 619 (2d Cir. 1996)).

Thus, the Court will disregard the statements made by de Cesare in his declaration regarding a ten-year warranty because the Court finds them to be inconsistent with his prior deposition testimony and with prior representations made by the Plaintiff in papers filed in this action.

Therefore, the Court finds that the Plaintiff has failed to create a genuine issue of material fact as to whether Arjo USA made an express warranty for future performance. Accordingly, the Court concludes that the Plaintiff's breach of warranty claims premised on the first eight shipments of Arjojet paper are time-barred and must be dismissed. The Court will now address the Plaintiff's breach of warranty claims arising from the final two shipments of Arjojet paper on June 30 and July 30, 2008, which are timely.

### 4. As to the Final Two Shipments

Arjo USA argues that the Plaintiff's breach of warranty claims as to the final two shipments of Arjojet paper fail**,** as a matter of law**,** because it is undisputed that Arjo USA took back the final two shipments of Arjojet paper and credited the Plaintiff with the full purchase price that it paid for those two shipments. (The Def.'s Mem. of Law at 4.) As such, Arjo USA contends that the Plaintiff was made whole by its actions and suffered no damages. (<u>Id.</u>)

In support of this contention, Arjo USA points to a statement in its Rule 56.1 statement that the Plaintiff did not dispute, which states, "By agreement of the parties, on or about February 18, 2009, Arjo took back the last two shipments of the [Arjojet] paper and credited Fossil the total purchase price of those shipments ($54,972.46)." (The Def.'s 56.1 Statement at ¶

5.)  Arjo USA also notes that the Plaintiff stipulated to an identical statement in the pre-trial order.  (Joint Pre-Trial Order at 11.)  Finally, it relies on a statement made by the Plaintiff in its initial counterstatement of facts:  "[The Defendant] eventually returned the [Arjojet] Paper and it was later used with success by a customer for an indoor application."  (The Pl.'s Counter 56.1 Statement at ¶ 6.)

In in its memorandum, the Plaintiff acknowledges that the parties entered into an agreement on February 18, 2009 but states that it only returned to Arjo USA the "unused paper" from the last two shipments.  (The Pl.'s Opp'n Mem. of Law at 5.)  In support, it points to June 30 and July 30, 2008 vendor invoices indicating that the Plaintiff ordered a total of 186 rolls of Arjojet paper.  (Giusto Decl., Ex. E.)  In a declaration by de Cesare attached to its legal memorandum, he asserts that after complaining to Arjo USA about the quality of the paper for six months, Arjo USA finally agreed on February 18, 2009 to take back "approximately 50 rolls" of the unused paper and give the Plaintiff a "credit toward its last two invoices."  (de Cesare Decl. at ¶ 13.)  The Plaintiff also points to deposition testimony from de Cesare.  (Id. at 9.)  In particular, when asked if the Plaintiff had used some of the Arjojet paper delivered on June 30 and July 30, 2008, de Cesare responded, "Correct."  (Giusto Decl., Ex. A, at 93:3–6.)  As the Plaintiff used approximately 146 rolls of the 186 rolls that it purchased on June 30 and July 30, 2008, it contends that it has raised a triable issue of fact as to whether it suffered damages as result of the allegedly defective paper contained in the final two shipments.  (The Pl.'s Opp'n Mem. of Law at 9.)

In response, Arjo USA asserts that the Court is required to deem as admitted the undisputed statements made in its 56.1 statement and the stipulation of fact in its joint pre-trial order — namely, that Arjo USA took back the final two shipments of the Arjojet paper and

credited the Plaintiff with the full purchase price of its final two orders of Arjojet paper. (The

Def.'s Reply Mem. of Law 9–10.)

Local Rule 56.1 requires that: (1) a party moving for summary judgment to submit a

"short and concise statement, in numbered paragraphs, of the material facts as to which the

moving party contends there is no genuine issue to be tried"; (2) the opposing party to submit a

statement containing "a correspondingly numbered paragraph responding to each numbered

paragraph in the statement of the moving party, and if necessary, additional paragraphs

containing a separate, short and concise statement of additional material facts as to which it is

contended that there exists a genuine issue to be tried"; and (3) "each statement by the movant or

the opponent be followed by followed by citation to evidence which would be admissible[.]"

In addition, Rule 56.1(c) states:

> Each numbered paragraph in the statement of material facts set forth in the
> statement required to be served by the moving party will be deemed to be
> admitted for purposes of the motion unless specifically controverted by a
> correspondingly numbered paragraph in the statement required to be served by the
> opposing party.

Based on Rule 56.1(c), courts in this Circuit have granted summary judgment on the basis

of uncontested assertions in the moving party's Local Rule 56.1 Statement.  See, e.g., Holtz v.

Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) ("[W]e have affirmed the grant of summary

judgment on the basis of uncontested assertions in the moving party's Local Rule 56.1

statement."); Gesualdi v. Reinforcing Supply, LLC, No. 12-CV-5406 (SJF) (AKT), 2014 WL

4629047, at *1 (E.D.N.Y. Sept. 12, 2014) ("[T]he Court disregards the assertions in Defendants'

56.1 Statement and deems admitted the uncontroverted facts in Plaintiffs' 56.1 Statement.").

However, the Second Circuit in Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir.

2001) made clear that "[a] district court has broad discretion to determine whether to overlook a

party's failure to comply with local court rules." It reasoned that "[t]he purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." Id. As the Rule's intent was largely administrative, the Second Circuit concluded that it did not trump the moving party's evidentiary burden on summary judgment:

> The local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record.

Id. at 74.

Based on this reasoning, the Second Circuit in Holtz declined to deem as admitted two assertions made by the defendant in its 56.1 statement that were not disputed by the plaintiff because those statements were not supported by the record. Id.; see also DeRienzo v. Metro. Transp. Auth., Metro N. Commuter R.R., 237 F. App'x 642, 647 (2d Cir. 2007) ("[A] district court had discretion to overlook a party's failure to comply with Local Rule 56.1.").

Here, as noted, the Plaintiff did not dispute a statement by Arjo USA in its 56.1 statement that on February 18, 2009, "Arjo USA took back the last two shipments of the Paper and credited [the Plaintiff] the total purchase price of those shipments ($54,972.46)." (The Def.'s Rule 56.1 Statement at ¶ 5.). Further, in its own counter-statement of facts, the Plaintiff stated, "[The Plaintiff] eventually returned the [Arjojet] Paper." (The Pl.'s Counter Rule 56.1 Statement at 31.)

The Court finds the failure by the Plaintiff to dispute the statement in the Defendant's 56.1 statement and indeed to affirmatively represent the same fact in its own counter 56.1 statement to be troubling. However, upon the Court's own review of the record, it has found

sufficient evidence to raise a triable issue of fact as to whether the Plaintiff did in fact use the allegedly defective paper in the final two shipments.

For one thing, the Arjojet paper was delivered to the Plaintiff on June 30 and July 30, 2008, more than six months prior to February 18, 2009, when Arjo USA allegedly agreed to take back the Arjojet paper that it sent to the Plaintiff. The six to seven month period that transpired between when the final two purchases orders of Arjojet paper was delivered to the Plaintiff and when the paper was allegedly returned to Arjo USA could suggest to a jury that the Plaintiff had sufficient time within which to use at least some of that paper in manufacturing its signs.

Further, there is admissible testimony in the record which suggests that the Plaintiff did in fact use some of the paper in the final two shipments. Specifically, when asked if the Plaintiff had used some of the Arjojet paper delivered on June 30 and July 30, 2008, de Cesare, the President of the Plaintiff, responded, "Correct." (Giusto Decl., Ex. A, at 93:3–6.) Also, in a declaration filed by the Plaintiff in connection with summary judgment, de Cesare stated that the Defendant only took back 50 of the 186 rolls of Arjojet paper of the final two shipments. (de Cesare Decl. at ¶ 13.) Unlike his statement with regard to a future warranty discussed earlier, de Cesare's statement that the Plaintiff used at least 136 rolls of Arjojet paper from the final two shipments is consistent with his prior deposition testimony. Accordingly, the Court is not inclined to disregard that statement, as it did with other statements in his declaration related to a purported future warranty. See White v. ABCO Engineering, Corp., 221 F.3d 293, 304 (2d Cir. 2000) ("[T]he principle does not apply if the deposition and the later sworn statement are not actually contradictory . . . . Thus, it does not apply where the later sworn assertion addresses an issue that was not, or was not thoroughly or clearly, explored in the deposition[.]"); Sethi v.

Narod, 974 F. Supp. 2d 162, 180 (E.D.N.Y. 2013) ("[A]n affidavit is only to be disregarded if it is actually inconsistent.").

Thus, based on the evidence in the record, the Court, in its discretion, overlooks the Plaintiff's failure to dispute that Arjo Jet USA took back all of the last two shipments of Arjojet paper in its Rule 56.1 statement because there is evidence in the record which suggests otherwise.  See Conte v. Cnty. of Nassau, No. 06-CV-4746 (JFB) (ETB), 2010 WL 3924677, at *1 (E.D.N.Y. Sept. 30, 2010) ("Given the citations to the record in the parties' papers, the Court and the parties are able to discern the evidence upon which the parties rely to attempt to create disputed issues of fact. Therefore, in the exercise of its broad discretion, the Court will overlook the alleged failures to comply with Rule 56.1 and, furthermore, will deem admitted only those facts in the parties' Rule 56.1 statements that are supported by admissible evidence and not controverted by other admissible evidence in the record.").

The Court finds the Plaintiff's stipulation of fact in the pre-trial order that Arjo USA "took back the last two shipments of the Paper" to be more problematic.

Fed. R. Civ. P 16(e) provides:

The court may hold a final pretrial conference to formulate a trial plan, including a plan to facilitate the admission of evidence. The conference must be held as close to the start of trial as is reasonable, and must be attended by at least one attorney who will conduct the trial for each party and by any unrepresented party. The court may modify the order issued after a final pretrial conference only to prevent manifest injustice.

Fed. R. Civ. P. 16(e) (emphasis added).  Although the Plaintiff does not state it explicitly, its assertion that it used Arjojet paper from the final two shipments in manufacturing its signs is contrary to the explicit stipulation of fact made by it in the pre-trial order.  Thus, in effect, the Plaintiff asks the Court to modify the pre-trial order.

This is not an easy standard to meet. A final pre-trial order "is not to be changed lightly . . . [and] [t]hat which is not alleged in the Pre–Trial Order is generally deemed waived." Eberle v. Town of Southampton, 305 F.R.D. 32, 35 (E.D.N.Y. 2015) (Spatt, J) (quoting Commerce Funding Corp. v. Comprehensive Habilitation Services, Inc., No. 01 Civ. 3796 (PKL), 2005 WL 1026515, at *6 (S.D.N.Y. May 2, 2005)) (emphasis in original).

However, "[t]his does not mean that a pretrial order is a legal 'strait-jacket' binding the parties and court to an unwavering course at trial.'" Manley v. AmBase Corp., 337 F.3d 237, 249 (2d Cir. 2003) (quoting Napolitano v. Compania Sud Americana De Vapores, 421 F.2d 382, 386 (2d Cir. 1970)). Rather, "[d]istrict courts have considerable discretion in the management of trials, and this necessarily 'includes a certain amount of latitude to deviate from the terms of [a] pretrial order.'" Id. (quoting HBE Leasing Corp. v. Frank, 22 F.3d 41, 45 (2d Cir. 1994)).

The Second Circuit in Potthast v. Metro-N. R.R. Co., 400 F.3d 143, 153 (2d Cir. 2005) stated that the appropriate factors for a district court to consider when deciding whether to authorize an amendment of a pre-trial order:

> (1) the prejudice or surprise in fact to the opposing party; (2) the ability of the party to cure the prejudice; (3) the extent of disruption of the orderly and efficient trial of the case; and (4) the bad faith or willfulness of the non-compliant party. Prejudice to the party seeking amendment or modification of the order is also relevant, as a trial court should not refuse to modify a pre-trial order where manifest injustice will result.

Id. (quoting Rapco, Inc. v. Comm'r, 85 F.3d 950, 953 (2d Cir. 1996))

Courts have found that an amendment to a pre-trial order would cause a material injustice where declining the amendment would leave the plaintiff without a theory of recovery. For example, in Meaux Surface Prot., Inc. v. Fogleman, 607 F.3d 161, 167 (5th Cir. 2010), the Fifth Circuit upheld a district court's decision to permit the plaintiff amend the pre-trial order to assert a theory of lost profits in a breach of contract action. The court reasoned:

> Without lost profits, [the plaintiff] would have no remaining theory of recovery. Because disallowing the amendment would have left [the plaintiff] dead in the water, the court held that modification of the pretrial order was 'warranted to prevent substantial injustice.' This finding is watertight.

Id. at 167.

The court in Fogleman also found that the prejudice to the defendants was limited because "the two years between filing and trial, defendants obtained discovery and filed motions concerning lost profits . . . , which the court deemed part of the pretrial order, gave defendants a warning shot across the bow months in advance of trial that this remedy was not abandoned." Id. at 168; see also Mandarino v. Mandarino, 408 F. App'x 428, 432 (2d Cir. 2011) ("This is not a case in which Appellant was presented with proposed defense witnesses on the eve of trial; to the contrary, the district court permitted the Defendants' amendment of the pretrial order more than three and a half months prior to the hearing, and there is simply no evidence in the record that Appellant lacked notice of the testimony, was unable to depose Gerard or Joseph Mandarino, or was in any manner prejudiced by the court's decision to permit them to testify."); Giannone v. Deutsche Bank Sec., Inc., No. 03 CIV. 9665 (WHP), 2005 WL 3577134, at *2 (S.D.N.Y. Dec. 30, 2005) ("[T]his Court grants Deutsche Bank leave to amend the Joint Pretrial Order to include Brenner as an additional witness and to include the eight additional exhibits identified in Defendant's moving papers. In so doing, this Court notes that there is ample time before trial for Giannone to cure any minimal prejudice that may inure to her as a result of such an amendment.")

Here, the Court is mindful of the importance of holding parties to the stipulations of fact that they consent to in pre-trial orders. As the Second Circuit noted in Mull v. Ford Motor Co., 368 F.2d 713, 716 (2d Cir. 1966), "stipulations ought to be binding, not only to do justice between the parties, but to encourage their effective use." In that regard, "[w]hen an admission

or agreement concerning a factual issue is made at the pretrial conference and is incorporated in the court's pretrial order, that issue stands as fully determined as if it had been adjudicated after the taking of testimony[.]" 6A Wright & Miller, Federal Practice and Procedure § 1527.1 (3d ed.). The Plaintiff was represented by Raymond A. Giusto, Esq. ("Giusto") at the pre-trial hearing and, thus, should have been aware of the effect of stipulating to a fact in a pre-trial order.

That said, the Court, in its broad discretion, finds that allowing the Plaintiff to amend the pre-trial order and disavow its stipulation of fact that Arjo USA took back the last two shipments of Arjojet paper is necessary to prevent a manifest injustice.

The parties appear to agree, as do at least two district courts in this Circuit, that damages is a required element of a breach of warranty claim.. See Orlander v. Staples, Inc., No. 13 CIV. 703 (NRB), 2014 WL 2933152, at *8 (S.D.N.Y. June 30, 2014) ("Even if the transaction between plaintiff and Staples could be construed as a sale of goods, plaintiff's breach of warranty claim would still fail for lack of damages[.]"); see also Marcus v. AT & T Corp., 938 F. Supp. 1158, 1172-73 (S.D.N.Y. 1996) aff'd sub nom. Marcus v. AT&T Corp., 138 F.3d 46 (2d Cir. 1998) ("[The] plaintiffs' [breach of warranty] claim is insufficient because plaintiffs have suffered no damages as a result of any alleged breach."). Thus, if the Plaintiff cannot show damages, it will not succeed on its breach of warranty claims.

As noted, the Plaintiff's claims arising from the first eight shipments of Arjojet paper are time-barred, leaving only two shipments of Arjojet paper from which it can assert a claim. According to the Pre-trial Order, on February 18, 2013, Arjo USA took back all of the rolls of Arjojet paper from the two final shipments and credited the Plaintiff the full amount paid for the purchase of the paper. (See Joint Pre-Trial Order at 11.) Thus, if bound by this stipulation, the

Plaintiff appears to concede that it was made whole by Arjo USA's actions and did not suffer any damages as a result of the allegedly defective final two shipments.

Therefore, without permitting the Plaintiff to disavow the stipulation in the pre-trial order, the Plaintiff would essentially be left "dead in the water," without a viable theory of recovery. The Court is reluctant to allow such a result here because, as noted, the sparse evidence in the record suggests that the Plaintiff did in fact use some of the Arjojet paper in the final two shipments, and thus, does have a claim that should be submitted to a jury. See Fogleman, 607 F.3d at 167 ("Because disallowing the amendment would have left Meaux dead in the water, the court held that modification of the pretrial order was 'warranted to prevent substantial injustice.' This finding is watertight.").

Also, the other factors outlined by the Second Circuit in Potthast do not change this result. With regard to the first factor — the prejudice or surprise in fact to the opposing party —, the Court finds there to be limited prejudice to Arjo USA because there is evidence in the deposition testimony of de Cesare that put Arjo USA on notice that the Plaintiff intended to claim that it used some portion of the Arjojet paper from the final two shipments, and therefore suffered damages.

The Court also finds the second factor — the ability of the party to cure the prejudice — to weigh in favor of permitting amendment because a trial date has not been set. Therefore, Arjo USA will have plenty of time to prepare a defense to the Plaintiff's claims arising from the final two shipments. See Deutsche Bank Secs., Inc., 2005 WL 3577134 at *2 (granting leave to amend a pretrial order to include an additional witness and additional exhibits, and "[i]n so doing, . . . not[ing] that there is ample time before trial for Giannone to cure any minimal prejudice that may inure to her as a result of such an amendment").

Similarly as to the third factor, the Court does not find that permitting the Plaintiff to contend that it used some of the paper from the final two shipments to "disrupt the orderly and efficient progression of this case." This "is not a case in which Appellant was presented with proposed defense witnesses on the eve of trial." Mandarino, 408 F. App'x at 432. Rather, the Plaintiff seeks to modify a stipulated fact in a pre-trial order before a trial date has been set. Moreover, the disputed fact has been the subject of deposition testimony, so there is no need to delay the start of trial by, for example, re-opening discovery or permitting additional depositions.

Finally, as to the fourth factor — the bad faith or willfulness of the non-compliant party —, the Court notes that the Plaintiff's belated attempt to circumvent a fact that it stipulated to in the pre-trial order and its own 56.1 statement could reflect negligence, even carelessness. However, without affirmative evidence of intent, the Court does not find that the Plaintiff's efforts to circumvent its prior stipulations reflect "bad faith" or "willful" non-compliance.

Therefore, the Court permits the Plaintiff to assert that it used some of the Arjojet paper in the final two shipments even though doing so contradicts a stipulation of fact in the joint pre-trial order. Moreover, because there is evidence in the record to support the Plaintiff's contention that it used some of the paper in the final two shipments, the Court finds that there is a triable issue of fact as to whether the Plaintiff suffered damages as a result of Arjo USA's alleged breaches of express and implied warranties.

### 5. As to the Declaratory Judgment Claim

Finally, the Plaintiff seeks a declaratory judgment that "the Defendants are liable for any claims asserted against [the] Plaintiffs [sic] by its customers by reason of [the] Defendants' defective goods"; and as a result, the "Defendants are obligated to indemnify [the] Plaintiff for

all legal fees, costs and expenses incurred by it in the prosecution of this action." (Compl. at ¶ 55.)

The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (emphasis).

The Second Circuit has stated that the decision to entertain a declaratory judgment claim is discretionary and has instructed district courts to consider two factors before deciding to exercising jurisdiction over such a claim: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 411 F.3d 384, 389 (2d Cir. 2005).

In addition, the Second Circuit has outlined several other factors that are not applicable here:

> (1) whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata'; (2) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (3) whether there is a better or more effective remedy.

Dow Jones & Co. v. Harrods Ltd., 346 F.3d 357, 359–60 (2d Cir. 2003).

Where, as here, a plaintiff seeks declaratory relief that will be resolved by the litigation of its damage claims, courts have found a declaratory judgment to serve "no useful purpose" and dismissed claims seeking such relief. See Amusement Indus., Inc. v. Stern, 693 F. Supp. 2d 301, 311 (S.D.N.Y. 2010) ("The fact that a lawsuit has been filed that will necessarily settle the issues for which the declaratory judgment is sought suggests that the declaratory judgment will serve

'no useful purpose.'"); <u>Intellectual Capital Partner v. Institutional Credit Partners LLC</u>, No. 08 CIV. 10580 (DC), 2009 WL 1974392, at *6 (S.D.N.Y. July 8, 2009) (Chin, J) ("I find that here declaratory relief would serve no useful purpose as the legal issues will be resolved by litigation of the breach of contract claim."); <u>Sofi Classic S.A. de C.V. v. Hurowitz</u>, 444 F. Supp. 2d 231, 249–50 (S.D.N.Y.2006) ("Plaintiffs' declaratory judgment claim seeks resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action. Therefore, the claim is duplicative in that it seeks no relief that is not implicitly sought in the other causes of action.").

Here, the Plaintiff asks the Court for a judgment declaring that its customers, who are not parties to this case, were damaged by Arjo USA's allegedly defective products. That question will necessarily be resolved by the Court in deciding the Plaintiff's remaining breach of warranty claims.

The Plaintiff also seeks a declaratory judgment that the Plaintiff is entitled to indemnity for any judgments or legal costs involved in defending against suits brought by its customers arising from Arjo USA's allegedly defective productive. The Court has already dismissed the Plaintiff's breach of contract claims for failure to identify any terms of any agreement that the Defendant allegedly breached. Thus, the Plaintiff's claim that the Defendant entered into an oral agreement providing for indemnification also fails for the same reason.

Accordingly, the Court finds that declaratory relief would serve no "useful purpose" because the Plaintiff seeks resolution of legal issues that either have been or will be resolved in the course of resolving the other causes of action. See <u>Fleisher v. Phoenix Life Ins. Co.</u>, 858 F. Supp. 2d 290, 303 (S.D.N.Y. 2012) ("Because . . . this Court does have the express breach of contract claim through which to adjudicate the validity of Phoenix's COI Increases, the . . . need

to turn to declaratory relief is absent."); <u>Dolphin Direct Equity Partners, LP v. Interactive Motorsports & Entm't Corp.</u>, No. 08 CIV 1558 (RMB) (THK), 2009 WL 577916, at *11 (S.D.N.Y. Mar. 2, 2009) ("'Because this Court has already analyzed the parties' rights [and obligations] under the [Purchase Agreement, Management Agreement, and Non–Competition Agreement] in connection with [Plaintiffs'] breach of contract claim[s], a declaratory judgment on the same issue[s] would be superfluous.'") (quoting <u>Core–Mark Int'l Corp. v. Commonwealth Ins. Co.</u>, No. 05 Civ. 0183, 2006 WL 2501884, at *9 (S.D.N.Y. Aug. 30, 2006)).

Accordingly, the Court dismisses the Plaintiff's claim for a declaratory judgment.

### III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that Arjo SAS is dismissed from this action without prejudice; and it is further

**ORDERED**, that the Plaintiff's breach of contract claims are dismissed; and it is further

**ORDERED**, that the Plaintiff's breach of warranty claims are dismissed to the extent that they arise from the first eight shipments to the Plaintiff of Arjojet paper; and it is further

**ORDERED**, that Arjo USA's motion is denied solely with respect to the Plaintiff's breach of warranty claims arising from the final two shipments of Arjojet paper to the Plaintiff; and it is further

**ORDERED**, that the Plaintiff's claim for declaratory relief is dismissed; and it is further

**ORDERED**, that the parties are directed to submit an amended pre-trial order to United States Magistrate Judge Steven I. Locke consistent with the above-decision within thirty days of the date of this Order; and it further

**ORDERED**, that the Clerk of the Court is directed to amend the caption of this action to be consistent with this Order.

For the purpose of clarity, the Court notes that the trial in this case will be limited to the Plaintiff's breach of warranty claims arising from its final two purchases of Arjojet paper that were shipped to the Plaintiff on June 30 and July 30, 2008, respectively.

**SO ORDERED.**
Dated: Central Islip, New York
September 12, 2015

_/s/ Arthur D. Spatt_
ARTHUR D. SPATT
United States District Judge